**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW HALL, | ) | |
| and JOANN MCLAUGHLIN, | ) | |
| on behalf of Plaintiffs and the class | ) | |
| members described herein, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-01624 |
| | ) | |
| GREEN ARROW SOLUTIONS, d/b/a | ) | |
| GREEN ARROW LOANS; | ) | |
| INTEGRA FINANCIAL SERVICES, | ) | |
| LLC; NEVADA IMPACT | ) | DEMAND FOR TRIAL BY JURY |
| MANAGEMENT, LLC; | ) | |
| DAN SHAW; GREG JONES; | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT – CLASS ACTION

1.     Plaintiffs, Matthew Hall and Joann McLaughlin, bring this action against Defendants (a) Green Arrow Solutions, d/b/a Green Arrow Loans ("Green Arrow Solutions"), (b) Integra Financial Services, LLC, (c) Nevada Impact Management, LLC, (d) Dan Shaw, (e) Greg Jones, and (f) John Does 1-20 to secure redress for usurious and illegal loans (such as Exhibits A-B) made to Illinois residents.

2.     Plaintiffs seek a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (Count IV).

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964, 28 U.S.C. § 1337, and 28 U.S.C. § 1367. Jurisdiction may also exist under 28 U.S.C. § 1332(d), in that the amount in controversy on a classwide basis exceeds $5 million, exclusive of interest and costs, and in that there are believed to be over 100 members of the class, all of whom are of diverse citizenship to Defendants.

4.      This Court has personal jurisdiction over Defendants because they:

a.      Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures,* 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b.      Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

5.      Venue is proper because acts to obtain and collect the loans impacted Plaintiffs in the Northern District of Illinois.

6.      Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury

Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

7.      Plaintiff Matthew Hall is a natural person who at all times relevant has resided in Cook County, Illinois.

8.      Plaintiff Joann McLaughlin is a natural person who at all times relevant has resided in Will County, Illinois.

9.      Defendant Green Arrow Solutions purports to be an entity created and owned by the Big Valley Band of Pomo Indians of the Big Valley Rancheria ("Tribe"). (Exhibits A-B) As set forth below, it is not owned by the Tribe.

10.     Green Arrow Solutions does business as Green Arrow Loans via the website, www.GreenArrowLoans.com.

11.     At no time have Defendants had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling them to make loans to Illinois residents at more than 9% interest.

12.     Defendants nevertheless advertise and make loans to Illinois residents at rates greatly exceeding 9%.

13.     Defendants sought out Illinois residents for such loans.

14.     Defendant Integra Financial Services, LLC ("Integra") is a limited liability company organized under Nevada law. It uses the address 1759 N. 400 East, Suite 202, North Logan, Utah. Its registered agent and office is Registered Agent Inc., 401 Ryland St., Ste. 200-A, Reno, NV 89502. It has a single managing member, Nevada Impact Management, LLC.

15.     Defendant Nevada Impact Management, LLC ("Impact") is a limited liability

company organized under Nevada law. Its registered agent and office is Registered Agent Inc., 401 Ryland St., Ste. 200-A, Reno, NV 89502.

16.     Impact has two managers, Dan K. Shaw ("Shaw") and Gregory Jones ("Jones"), both of 2520 St. Rose Pkwy., Suite 111, Henderson, NV 89074.

17.     Shaw and Jones are named as Defendants herein.

18.     Both Integra and Impact are run by Defendants Dan Shaw and Greg Jones.

19.     Impact also is manager of a company, Loan Trax LLC, also located at 1759 N. 400 E Suite 202, North Logan, UT 84341.

20.     On information and belief, Shaw and Jones formed Integra in July 2011 for the purposes of acquiring substantially all of the assets of Impact Payment Systems, LLC, an Internet lender.

21.     Impact Payment Systems, LLC had been sued by the SEC in March 2011. The SEC alleged that it was a Ponzi scheme which raised $47 million to lend.

22.     On April 3, 2012, Integra moved to terminate the receivership of Impact, having acquired its assets and operations.

23.     In about 2014, Shaw, Jones, Integra and Impact created Green Arrow Solutions and www.GreenArrowLoans.com to continue to conduct a high-interest Internet loan business.

24.     Shaw and Jones are the true operators and beneficiaries of www.GreenArrowLoans.com.

25.     Shaw and Jones are not members of the Tribe.

26.     Green Arrow Solutions make loans to consumers at more than 700%. (Exhibit C)

27.     Green Arrow Solutions states on its website that "[w]e do not always lend in every state. Our states of operation change frequently; please check back periodically to see if we are doing business in your state. We do not currently offer loans to customers in Arkansas, Colorado, Connecticut, Georgia, Maryland, Minnesota, Montana, New Hampshire, New York, North Carolina, Pennsylvania, Puerto Rico, Vermont, Virginia, Washington, and West Virginia."

28.     On information and belief, the list of states in which Defendants do not make loans depends on the likelihood they will face public or private enforcement actions.

29.     The business operations of Green Arrow Solutions, including incoming and outgoing phone calls and emails, review of loan applications, underwriting, payment processing, website maintenance, and marketing, are conducted outside of the Tribe's reservation. On information and belief, they are conducted in North Logan, Utah, for the benefit of persons who are not members of the Tribe.

30.     The "hours of operation" on www.GreenArrowLoans.com are listed as "Monday - Thursday: 7:00 AM to 7:00 PM MST. Friday: 7:00 AM to 5:00 PM MST." The Tribe is in the Pacific time zone. Utah is in the Mountain time zone.

31.     Green Arrow Solution's website is hosted in Los Angeles. (Exhibit D)

32.     A number of other internet lenders also claim to be owned or operated by the Tribe, including:

        a.      Big Valley Financial (www.bigvalleyfinancial.com);

        b.      Golden Gate Funding (www.goldengatefunding.com);

        c.      Tremont Lending (www.tremontlendingloans.com);

        d.      Little Lake Lending (www.littlelakelending.com); and

        e.      Condor Credit (www.condorcredit.com).

33.     John Does 1-20 are other natural or artificial persons who participated in the Internet lending scheme complained of herein.

### FACTS RELATING TO INTERNET LENDING BUSINESS

34.     Shaw, Jones and others developed a plan to make illegal high-interest loans over the Internet, while evading liability for such loans by using the tribal immunity of the Tribe.

35.     While Green Arrow Solutions purports to be a tribal entity, it is not.

36.     The actual lending operations were carried out and continue to be carried out in locations other than tribal lands.

37.     No member of the Tribe participates in significant lending operations.

38.     The profits from the lending activities are received by non-members of the Tribe.

39.     The funds lent are transferred by ACH credit to the borrowers' bank accounts throughout the United States.

40.     Repayment of the loans is made by ACH debit from the borrowers' bank accounts throughout the United States.

## FACTS RELATING TO PLAINTIFFS

41.     Green Arrow Solutions uses its website, www.GreenArrowLoans.com, to make loans to consumers at interest rates in excess of 700% annually. (Exhibit A)

42.     On October 20, 2022, Green Arrow Solutions made a loan to Plaintiff Hall with an amount financed of $350 and a disclosed annual percentage rate of 844.98%. (Exhibit A).

43.     The loan would result in repayment of $1,213.35 if paid every two weeks for five months. The total interest charged would be $863.35.

44.     On November 18, 2022, Green Arrow Solutions made a loan to Plaintiff McLaughlin with an amount financed of $500 and a disclosed annual percentage rate of 804.09%. (Exhibit B).

45.     The loan would result in repayment of $1,595.53 if paid every two weeks for five months. The total interest charged would be $1095.53.

46.     The loan agreement (Exhibits A-B) is a standard form.

47.     The loans were made for personal purposes and not for business purposes.

48.     The principal amount of the loans was transferred to Plaintiffs' bank accounts in Illinois via ACH.

49.     The loans were made entirely via the Internet.

50.     The loans were to be repaid via ACH.

51.     Defendants' lending does not actually occur on the Tribe's reservation.

52.     A significant majority of the transaction occurs within the State of Illinois – applying

for the loan and receiving and collecting the funds.

53.     The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

54.     Plaintiffs have never set foot on the Tribe's land.

55.     Loans to Illinois residents made in the same manner as the loan to Plaintiffs are governed by the laws of the State of Illinois.

### ILLINOIS PROHIBITIONS ON PREDATORY LOANS

56.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

57.     Under 815 ILCS 123/15-10-5(b), "[a]ny violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

58.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

59.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan]

Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

60. Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

61. Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

62. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

63. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12

CC 569; *In the Matter of Money Mutual, LLC*, No. 12 CC 408; *In the Matter of Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

## DEFENDANTS' RENT-A-TRIBE SCHEME

64.     In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

65.     Here, and in such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

66.     The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

67.     In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

68.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

69.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the

entities." *Breakthrough* at 1183, 1187-88.

70. These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

71. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

72. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

73. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT

74. Plaintiffs incorporate paragraphs 1-73.

75. This claim is against all Defendants.

76. There is a controversy between Plaintiffs and the class, on the one hand, and Defendants, on the other, as to whether Plaintiffs and the class members must repay the loans made

to them.

77.     Declaratory relief will resolve such controversy.

78.     An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

79.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

80.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Green Arrow Solutions or Green Arrow Loans at more than 9% interest (c) which loan has not been paid in full.

81.     Plaintiffs may alter the class definition to conform to developments in the case and discovery.

82.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

83.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

84.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

85.     Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

86.     Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

87.     The class is entitled to a declaration that Defendants are not entitled to collect on the

loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

    i.      Injunctive relief;

    ii.     Declaratory relief;

    iii.    Restitution of all amounts collected on the loans from members of the class;

    iv.    Costs of suit; and

    v.     Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

88. Plaintiffs incorporate paragraphs 1-73.

89. This claim is against all Defendants.

90. Defendants contracted for and collected loans at more than 9% interest from Plaintiffs and the class members, in violation of 815 ILCS 205/4.

91. Plaintiffs and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

92. Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

93. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Green Arrow Solutions or Green Arrow Loans at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

94. Plaintiffs may alter the class definition to conform to developments in the case and discovery.

-12-

95.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

96.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

97.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained  counsel experienced in class actions and consumer credit litigation.

98.     Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

99.     A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.      Individual actions are not economically feasible.

        b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

                i.      Damages as provided in 815 ILCS 205/6.

                ii.     Attorney's fees, litigation expenses and costs of suit; and

                iii.    Such other and further relief as the Court deems proper.

**COUNT III  – PREDATORY LOAN PREVENTION ACT
AND ILLINOIS CONSUMER FRAUD ACT**

100.    Plaintiffs incorporate paragraphs 1-73.

101.    This claim is against all Defendants.

102.    Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

103.    Violation of the Predatory Loan Prevention Act is a violation of the Illinois

Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

**CLASS ALLEGATIONS**

104.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

105.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Green Arrow Solutions or Green Arrow Loans at more than 36% interest (all of its loans qualify) (c) on or after March 23, 2021.

106.     Plaintiffs may alter the class definition to conform to developments in the case and discovery.

107.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

108.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

109.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

110.     Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

111.     A class action is superior for the fair and efficient adjudication of this matter, in that:

a.     Individual actions are not economically feasible.

b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

i.     Compensatory damages;

-14-

      ii.      Punitive damages;

      iii.      Attorney's fees, litigation expenses and costs of suit; and

      iv.      Such other and further relief as the Court deems proper.

## <u>COUNT IV – RICO</u>

112.     Plaintiffs incorporate paragraphs 1-73.

113.     This claim is against Integra Financial Services, LLC, Nevada Impact Management, LLC, Dan Shaw, and Greg Jones, who are the RICO "persons."

114.     All loans made in the name of Green Arrow Solutions or Green Arrow Loans to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

115.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

116.     "Green Arrow Solutions" or "Green Arrow Loans" is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

117.     Defendants Integra Financial Services, LLC, Nevada Impact Management, LLC, Dan Shaw, and Greg Jones are each associated with this enterprise.

118.     Defendants Integra Financial Services, LLC, Nevada Impact Management, LLC, Dan Shaw, and Greg Jones each conducted or participated in the conduct of the affairs of "Green Arrow Solutions" or "Green Arrow Loans" through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

119.     Plaintiffs were deprived of money as a result.

## CLASS ALLEGATIONS

120.     Plaintiffs bring this claim on behalf of a class.

121.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "Green Arrow Solutions" or "Green Arrow Loans" at more than 18% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

122.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

123.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a.      Whether the loans at issue are "unlawful debts" as defined in RICO.

b.      Whether "Green Arrow Solutions" or "Green Arrow Loans" is an "enterprise."

c.      Whether Defendants Integra Financial Services, LLC, Nevada Impact Management, LLC, Dan Shaw, and Greg Jones are each associated with "Green Arrow Solutions" or "Green Arrow Loans."

d.      Whether Defendants Integra Financial Services, LLC, Nevada Impact Management, LLC, Dan Shaw, and Greg Jones each conducted or participated in the affairs of "Green Arrow Solutions" or "Green Arrow Loans" through a pattern of making and collecting unlawful loans.

124.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

125.     Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

126.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible.

    b.    Members of the class are likely to be unaware of their rights.

    c.    Persons borrowing loans at over 700% are unlikely to be able to enforce their rights individually.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

    i.    Treble damages;

    ii.    Attorney's fees, litigation expenses and costs of suit; and

    iii.    Such other or further relief as the Court deems proper.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## JURY DEMAND

Plaintiffs demand trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

## <u>DOCUMENT PRESERVATION DEMAND</u>

Plaintiffs hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiffs, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiffs, and any account or number or symbol relating to them. These materials are likely very  relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiffs demand that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman